**In the Matter of DELAWARE AND HUDSON RAILWAY COMPANY, Debtor.**

**Bankruptcy No. 88–342.**

United States Bankruptcy Court, D. Delaware.

April 18, 1989.

Eduard F. von Wettberg, III, Wilmington, Del., Linda J. Broyhill, Charles H. White, Jr., Washington, D.C., for trustee.

William Quinn, Philadelphia, Pa., for New York, Susquehanna and Western Ry. Corp.

Leona Jochnowitz, New York State Dept. of Transp., Albany, N.Y., Anne E. Treadway, Philadelphia, Pa., for Consolidated Rail Corp.

John O'B. Clarke, Jr., Washington, D.C., for Railway Labor Executives' Ass'n.

BENCH DECISION

HELEN S. BALICK, Bankruptcy Judge.

We are here on the Trustee's motion to amend an order entered February 9 approving two agreements in connection with the NYS & W's continuing operation over D & H tracks.

On page 2 of the Memorandum of Understanding between the Trustee and NYS & W in the second paragraph appears the following language:

The Trustee and the proposed directed service operator have agreed to the following operating conditions which, we respectfully submit, should be incorpo-

rated by reference into a new § 11123 service order.

The terms and conditions of the agreements were approved by this court after full hearing and argument. The order stated "that such approval shall only become effective at such time as said terms and conditions are incorporated by the Interstate Commerce Commission, in its sole discretion and authority, into a service order or orders approving the continuation of service upon the D & H's lines by NYS & W beyond February 13, 1989." On February 13, the ICC entered an emergency order extending service by the NYS & W for 30 days.

The ICC following hearing on March 8 issued on March 15 a service order extending service order # 1506 through March 16, 1990 authorizing NYS & W to continue its operations as a substitute for D & H over all tracks over which the non-operating D & H has the right and obligation to operate. The ICC acknowledged that the parties had reached an agreement as to compensation. It declined the Trustee's request to incorporate verbatim the terms and conditions of the agreements into the service order contending that absent a disagreement among the parties, the Commission's authority is solely to recognize the existence of agreements. From such recognition it can be inferred that the ICC believes in the effectiveness of those agreements.

However, since the quoted portion of the February 9 order caused uncertainty among the parties as to the effectiveness of the agreements in the Chapter 11 case, the Trustee has moved to amend that order to delete the requirement of incorporation of the terms and conditions into the service order and to confirm effectiveness of the agreements. This court is not being asked to overturn the ICC decision nor to supply an order which the ICC has refused to give. This court and the ICC have statutory responsibilities in a railroad reorganization. When there are two bodies responsible for various aspects of a case, it is always difficult to draw a line and place those responsibilities on one side or the other. It is often unclear as to which body has the authority to act with respect to a specific issue and in some instances there may be interaction. The evidence presented on February 9 seeking approval of the two agreements suggested interaction of court and the ICC and that it was imperative to have an agreement as to compensation going into the ICC hearing scheduled for February 13. There were two objections to separate parts of those agreements by Guilford and RLEA. In approving the agreements, over those objections, the court noted that no part of either agreement could be separated from its other parts and based upon the evidence found that the interests of the public required approval and that the agreements reflected the Trustee's best attempts and best alternatives for continued service.

The only issue now before the court is whether the effectiveness of the agreements should be confirmed in the absence of verbatim incorporation of the agreements in the ICC order. The agreements reflected only that the parties thought their terms should be incorporated into the ICC order. The agreements do not require incorporation nor is such incorporation a requirement of the law. The RLEA's argument in February, as now, goes to its assertion that the Trustee with the permission of the court is abrogating the terms of the D & H collective bargaining agreements in violation of § 1167 of title 11 through, as RLEA then put it, the back door.

The agreements do not pass any operating authority to the NYS & W. The debtor gave notice of its impending cessation of service in June 1988. The operation of the railroad since that time has been by the NYS & W at the direction of the ICC under § 11125 and § 11123 of title 49, United States Code. At no time has the Trustee operated the railroad. His testimony at the February 9 hearing was to the effect that he could not undertake operation of the railroad at the expiration of the directed service order which was to expire on February 13.

There has been no transfer of operations by the Trustee to the NYS & W nor has he agreed to abrogating D & H's collective bargaining agreements.

The ICC found an emergency situation on February 13, extended service under § 11123 and 30 days thereafter extended service through March 16, 1990. Section 11123(a)(3) controls this situation, that is, the former D & H employees are employees of NYS & W and NYS & W is required to hire as many of those employees as it deems possible in running that railroad.

For the reasons stated, the Trustee's motion to amend the court's order of February 9 to delete the requirement of incorporation of the agreements into the ICC order is granted and the agreements are effective in this Chapter 11.